```
┌─────────────────┐
│    EXHIBIT       │
│                  │
│ _____      │
│            \     │
└─────────────────┘
```

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**WILLIAM JOSEPH GRAHAM, and**
**CRYSTAL MYRICK, on**
**behalf of themselves and**
**all others similarly situated,**

                                        **Civil Action No.: 3:09-CV-00655**

                **Plaintiffs,**

**v.**

                                        **JURY TRIAL DEMANDED**

**LEXISNEXIS RISK & INFORMATION**
       **ANALYTICS MANAGEMENT GROUP, INC.,**
**REED ELSEVIER, INC.,**
**SEISINT, INC.,**
**and**
**PROFESSIONAL ACCOUNT SERVICES, INC.,**

              **Defendants.**

**FIRST AMENDED CLASS ACTION COMPLAINT**

**INTRODUCTION**

1.      Plaintiffs William Joseph Graham and Crystal Myrick bring this action as a Class Action under the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*. Defendants LexisNexis Risk & Information Analytics Management Group, Inc., Reed Elsevier, Inc., and Seisint, Inc., operating as a single business, LexisNexis, furnished to Defendant Professional Account Services, Inc. consumer reports (branded as "Accurint" reports) containing public record information about the Plaintiffs and persons similarly situated. LexisNexis furnished these reports without any permissible purpose to do so and without the certification of a lawful purpose required by the FCRA. In fact, these reports were obtained and then used by parties who *expressly disclaimed* having any lawful purpose to use these reports. Defendant Professional Account Services, Inc. obtained and then used

these Accurint consumer reports to collect medical billing debts from the Plaintiffs and other putative class members. Plaintiffs allege in their class counts that this systemic conduct violated the FCRA, 15 U.S.C. §§1681b(a), 1681b(f) and 1681e(a).

2.      Plaintiffs also allege individual claims under the FCRA for the inaccuracy of the reports which were furnished by LexisNexis. In each instance, the reports included information pertaining to another similarly named, but unrelated person.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681n and § 1681p, and 28 U.S.C. § 1331.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b), as LexisNexis regularly does business in this District and Division. The Plaintiffs each reside here, and nearly all of the members of the Putative Classes will also reside here. Further, all of the members of the alleged putative classes reside in this Circuit and all members of all but one of the alleged classes reside in Virginia.

## PARTIES

5.      William Joseph Graham ("Mr. Graham") resides in Petersburg, Virginia and is a "consumer" as protected and governed by the FCRA.

6.      Crystal Myrick ("Ms. Myrick") resides in Emporia, Virginia and is a "consumer" as protected and governed by the FCRA.

7.      Defendant Reed Elsevier, Inc. ("Reed Elsevier") is an out-of-state corporation. It is a holding company that shares common management, finances, and control with its wholly-owned United States subsidiaries and divisions, including Defendant LexisNexis Risk and Analytic Group, Inc. ("LNRAG") and either directly or through LNRAG, Seisint, Inc. Upon information and belief, Plaintiffs allege that Reed Elsevier has no independent function beyond operation and control of its subsidiary divisions. Reed Elsevier describes itself as a collective

operation, representing that it "is a world leading provider of professional information and online workflow solutions in the Science, Medical, Legal, Risk Information and Analytics, and Business sectors."

8. Reed Elsevier is a "consumer reporting agency", as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

9. LNRAG is the entity name that Reed Elsevier uses to operate its public records, data aggregation, risk information and insurance risk evaluation, and employment screening business. It is a Minnesota corporation and a wholly owned subsidiary division of Reed Elsevier.

10. LNRAG is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f). LNRAG is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

11. Defendant Seisint, Inc. ("Seisint") was purchased by Reed Elsevier and LNRAG in 2004. Reed Elsevier integrated Seisint into LNRAG by, among other things, using respondent Seisint's facilities, personnel, technologies, and products in LexisNexis' other business operations. Since the acquisition, Reed Elsevier and LNRAG have controlled the acts and practices of Seisint.

12. Seisint is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f). Seisint is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

Page 3

13.     Reed Elsevier, LNRAG, and Seisint operate collectively as a single business unit under the brand LexisNexis (collectively, Defendants LexisNexis Risk & Information Analytics Management Group, Inc., Reed Elsevier, Inc. and Seisint, Inc. are referred to hereafter as "LexisNexis").

14.     Defendant Professional Account Services, Inc. ("PASI") is a debt collector as defined and governed y the FDCPA.

15.     PASI is the division operated by CHS/Community Health Systems, Inc. for the purpose of billing for and collecting consumer debts for medical services—medical bills—for CHS subsidiaries, including bills owed to Petersburg Hospital Company, LLC and Emporia Hospital Corporation. It is commonly owned, operated, managed, and controlled by CHS as if they were one and the same legal entity.

## FACTS

16.     Before Reed Elsevier and LNRAG purchased Seisint, the later entity was a smaller business operating in Florida. It gathered public-records data on consumers and sold it under two brands: Accurint and Securint. There was no material difference between the two reports but for the market to which each was targeted. While Accurint was marketed for a wide range of uses, Securint was sold exclusively for FCRA "employment" purposes.

17.     After Reed Elsevier and LNRAG purchased Seisint in 2004, and then after litigation and regulatory enforcement unrelated to the present case, LexisNexis restructured its operations to place ownership of Accurint within Seisint, and ownership of Securint (now named "Express Screen") in LNRAG.

18.     Upon information and belief, the Plaintiffs allege that the sole purpose for such restructuring was to attempt to separate, on paper, the production and sale of Accurint reports from Securint reports. LexisNexis acknowledged that its Securint reports were governed by the FCRA, while attempting to prevent governance of its Accurint products by the same statute.

19.     Plaintiffs allege on information and belief that despite the technical restructuring, both Accurint and Securint reports are still built on and contain public records information obtained from judgments, liens, bankruptcies, criminal records, licensing histories, and other personal information. LexisNexis makes a single effort to compile the public-record information it uses to generate all of the reports it sells into one database. It then creates two separate, identical output files from this single database and uses one output file to publish its FCRA-disclosed Securint reports and the other to publish its Accurint reports.

20.     LexisNexis *never* obtains the "will use only for FCRA purpose" certification required by the FCRA, and in fact every sale of an Accurint report is made with a certification that the report's user will not use the product for a permissible purpose under the FCRA.

21.     When selling the Accurint reports, and despite its solicitation of disclaimers and promises from its Accurint customers, LexisNexis knows that many and even most of its customers will use the report for a purpose governed (though not necessarily permitted) by the FCRA.

22.     When PASI commences collection of a medical bill from a consumer, it systematically and in nearly every instance obtains an Accurint report regarding their targeted debtor.

23.     PASI's written procedures instruct their collection employees to, when beginning collection of an account, "Review Accurint to verify social security number, new home address, employment, marriage/divorce records, bankruptcy records, and possible property assessments."

24.     For each instance in which PASI obtains an Accurint report from LexisNexis, it represents that it does not intend to use the report for an FCRA-permitted purpose.

25.     In early December, 2008, PASI began attempting to collect from Mr. Graham on a medical services debt that he did not owe and that was not his debt.

26.     PASI attempted to collect from Mr. Graham a medical services debt that it claimed was owed by a patient named Joseph D. Graham, who PASI claimed lived at Mr. Graham's residence.

27. No one named Joseph D. Graham resides at Mr. Graham's residence address, nor had anyone named Joseph D. Graham resided at Mr. Graham's residence address for at least the prior twenty-eight years, the period of time during which Mr. Graham has lived at his current home address.

28. Mr. Graham did not receive the medical services the payment of which PASI attempted to collect from him, nor did anyone in his family or household. Mr. Graham did not know who Joseph D. Graham was.

29. Mr. Graham became the target of PASI's collection attempts, upon information and belief, after PASI obtained an Accurint report based on the Social Security Number of Joseph D. Graham, the actual patient, which Accurint report, among other things, merged certain of Mr. Graham's personal identifier's with those of Joseph Darnell Graham, the actual patient of PASI.

30. Beginning in early 2009, PASI began collection activities directed at Ms. Myrick.

31. The actual medical services debt to which PASI's collection activities directed at Ms. Myrick was debt incurred by a patient named Crystal Myrick Cifers.

32. Ms. Myrick did not receive the medical services the payment of which PASI attempted to collect from her, nor did anyone in her family or household.

33. Although Ms. Myrick repeatedly told PASI that she was being dunned for an account that was not hers, for services that were not rendered to her, and for medical debt that was not her responsibility, PASI continued to demand payment from her for the debt of another person.

34. Upon information and belief, Ms. Myrick became the target of PASI's collection campaign based on the inaccurate contents of an Accurint report obtained by PASI, the contents

of which report formed the basis of PASI's false belief that Ms. Myrick owed PASI money on a medical services account that was not hers.

## COUNT ONE:  THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681b(a)

### CLASS CLAIM AGAINST LEXISNEXIS (CLASS ONE)

**Limited to Reports regarding Class members furnished to PASI for Virginia Consumers**

35.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth fully herein.

36.    Plaintiffs allege that LexisNexis sold their Accurint consumer reports and those of others similarly situated to PASI without a permissible purpose to do so.

37.    Under 15 U.S.C. § 1681b(a)(3), LexisNexis may provide consumer reports to customers *only* for the specific purposes listed in that section of the FCRA. LexisNexis may therefore only sell consumer reports where it has reason to believe its customer—

(A)    intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B)    intends to use the information for employment purposes; or

(C)    intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D)    intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E)    intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F)    otherwise has a legitimate business need for the information—

(i)    in connection with a business transaction that is initiated by the consumer; or

(ii)    to review an account to determine whether the consumer continues to meet the terms of the account.

38.    LexisNexis furnished Accurint reports regarding the Plaintiffs and each person similarly situated to PASI without a permissible purpose to do so.

39.    **CLASS ACTION ALLEGATIONS.**

a.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class ("Class One") of similarly situated individuals initially defined as:

> All natural persons residing in Virginia who were the subject of an Accurint report created by LexisNexis and furnished to PASI upon an account recorded at PASI for the collection of a bill on behalf of Petersburg Hospital Company, LLC or Emporia Hospital Corporation or any of their operated businesses within two years of the filing of this Complaint and continuing until the time this case is resolved.

> Excluded from the Class are any employees, officers, or directors of LexisNexis, Petersburg Hospital Company, LLC, Emporia Hospital Corporation or PASI and any judge assigned to hear this action.

b.    **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, the Plaintiffs allege that the members of Class One are so numerous that joinder of all is impractical. The names and addresses of members of Class One are identifiable through documents maintained by LexisNexis and/or PASI, and members of Class One may be notified of the pendency of this action by published and/or mailed notice.

c.    **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of Class One. These questions predominate over the questions affecting only individual members. They include, without limitation: whether the Accurint products furnished are consumer reports as defined by the FCRA; whether there was a permissible purpose to furnish these reports; whether LexisNexis' furnishing of the reports was willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

d.      **Typicality.**  FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each Class One Member. Plaintiffs are entitled to relief under the same causes of action as the other members of Class One. Without limitation, the procedures of LexisNexis and PASI were uniform and systemic. The reports furnished regarding the Plaintiffs and the circumstances for which such reports were furnished were uniform and typical of the facts for each member of Class One.

e.      **Adequacy.**  FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of Class One because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they each intend to prosecute this action vigorously. The interests of members of Class One will be fairly and adequately protected by Plaintiffs and their Counsel.

f.      **Superiority.**  FED. R. CIV. P. 23(b)(3).  Questions of law and fact common to Class One predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by LexisNexis's conduct. It would be virtually impossible for the members of Class One individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

40.     LexisNexis' violations of 15 U.S.C. § 1681b(a) were willful, entitling the Plaintiffs and each member of Class One to statutory damages between $100 and $1,000 per violation, as well as punitive damages pursuant to 15 U.S.C. § 1681n.

41.     Plaintiffs and the members of Class One are also entitled to their attorneys fees and costs of litigation pursuant to 15 U.S.C. § 1681n.

### COUNT TWO:  THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(a)

### CLASS CLAIM AGAINST LEXISNEXIS (CLASS TWO)

42.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth fully herein.

43.     Each time LexisNexis markets, solicits customers for, contracts to sell, or actually furnishes an Accurint report, it requires and actually solicits an affirmation certification from its customer that it will not use the report for one of the purposes permissible under the FCRA, 15 U.S.C. § 1681b(a).

44.     15 U.S.C. § 1681e(a) requires LexisNexis to have reasonable procedures in place "to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title"; requires that LexisNexis obtain from each user of an Accurint consumer report a certification that the report would only be used for a purpose permitted under the FCRA at 15 U.S.C. § 1681b(a); and prohibits LexisNexis from furnishing an Accurint consumer report if it has reason to believe that it would not be used for a purpose permitted under the FCRA at 15 U.S.C. § 1681b(a).

45.     LexisNexis's failure to have in place a procedure for ensuring that Accurint reports are only used for permissible purposes and to obtain the certification required violates Section 1681e(a) with every Accurint report LexisNexis sells.

46.    **CLASS ACTION ALLEGATIONS.**

a.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class (the "Class Two") of similarly situated individuals initially defined as:

> All natural persons residing in the states of Maryland, North Carolina, South Carolina, Virginia, and West Virginia who were the subject of an Accurint "SmartJury Report", "Bankruptcy Search Report", "Foreclosure Search Report", "Liens/Judgments Search Report", "Property Deeds Search Report", "Summary Report", "Asset Report", "Pre-Litigation Report", "Contact Card Report", "Finder Report", or "Comprehensive Report" created by LexisNexis and furnished to a user other than the respective class member within the two year period preceding the filing date of this Complaint and continuing up until the time this case is resolved. Excluded from the Class are any employees, officers, or directors of LexisNexis and any judge or juror assigned to hear this action.

b.    **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, the Plaintiffs allege that the members of Class Two are so numerous that joinder of all is impractical. The names and addresses of members of Class Two are identifiable through documents maintained by LexisNexis, and members of Class Two may be notified of the pendency of this action by published and/or mailed notice.

c.    **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of Class Two. These questions predominate over the questions affecting only individual members. They include, without limitation: Whether the Accurint products furnished are consumer reports as defined by the FCRA; whether LexisNexis had reason to believe that the reports would not be used for a permissible purpose; whether LexisNexis' violation of Section 1681e(a) was willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

d.    **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each Class Two member. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class. Without limitation, the procedures of LexisNexis were uniform and systemic. The reports furnished and certifications received regarding the Plaintiffs and the circumstances for

which such reports were furnished and not certified was uniform and typical of the facts for each member of Class Two.

      e.    **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of Class Two because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they each intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their Counsel.

      f.    **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to Class Two predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by LexisNexis's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

      47.    LexisNexis' violations of 15 U.S.C. § 1681e(a) were willful, entitling the Plaintiffs and each member of Class Two to statutory damages between $100 and $1,000 per violation as well as punitive damages pursuant to 15 U.S.C. § 1681n.

48.     Plaintiffs and the members of Class Two are also entitled to their attorneys' fees and costs of litigation pursuant to 15 U.S.C. § 1681n.

## COUNT THREE:  THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681b(f)

### CLASS CLAIM AGAINST PASI (CLASS THREE)
### Limited to Reports regarding Class members furnished to PASI in collection of accounts for Petersburg Hospital Company, LLC and Emporia Hospital Corporation

49.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth fully herein.

50.     15 U.S.C. § 1681b(f) prohibited PASI from obtaining or using a consumer report for any purpose unless (a) it was obtained for a "purpose for which the consumer report is authorized to be furnished under" Section 1681b(a), and (b) "the purpose is certified in accordance with" Section 1681e(a).

51.     Plaintiffs allege that PASI obtained and used their Accurint consumer reports and those of others similarly situated to without a permissible purpose to do so and without making the certification required at Section 1681e(a).

52.     **CLASS ACTION ALLEGATIONS.**

a.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class (the "Class Three") of similarly situated individuals initially defined as:

> All natural persons residing in Virginia who were the subject of an Accurint report created by LexisNexis and furnished to PASI upon an account recorded at PASI for the collection of a bill on behalf of Petersburg Hospital Company, LLC or Emporia Hospital Corporation or any of their operated businesses within two years of the filing of this Complaint and continuing until the time this case is resolved.

> Excluded from the Class are any employees, officers, or directors of LexisNexis, Petersburg Hospital Company, LLC, Emporia Hospital Corporation, or PASI and any judge assigned to hear this action.

> Each member of Class One is also a member of Class Three.

b.      **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, the Plaintiffs allege that the members of Class Three are so numerous that joinder of all is impractical. The names and addresses of members of Class Three are identifiable through documents maintained by LexisNexis and/or PASI, and members of Class Three may be notified of the pendency of this action by published and/or mailed notice.

c.      **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of Class Three. These questions predominate over the questions affecting only individual members. They include, without limitation: whether the Accurint products furnished are consumer reports as defined by the FCRA; whether PASI's purposes for obtaining and using these reports were permissible under the FCRA; whether PASI's violations of the FCRA were willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

d.      **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each Class Three member. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class. Without limitation, the procedures of LexisNexis and PASI were uniform and systemic. The reports obtained and used regarding the Plaintiffs and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of Class Three.

e.      **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of Class Three because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they each intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their Counsel.

f.      **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to Class Three predominate over questions affecting only individual members, and a class action is superior to other

available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by PASI's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

53.     PASI's violations of 15 U.S.C. § 1681b(a) were willful entitling the Plaintiffs and each member of Class Three to statutory damages between $100 and $1,000 per violation as well as punitive damages pursuant to 15 U.S.C. § 1681n.

54.     Plaintiffs and the members of Class Three are also entitled to their attorneys' fees and costs of litigation pursuant to 15 U.S.C. § 1681n.

## COUNT FOUR:  THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b)

### INDIVIDUAL CLAIM AGAINST LEXISNEXIS

55.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth fully herein.

56.     LexisNexis violated the FCRA, 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the Accurint reports they furnished to PASI regarding the Plaintiffs.

57.     These violations of the FCRA by LexisNexis were willful entitling the Plaintiff to punitive and statutory damages pursuant to 15 U.S.C. § 1681n. In the alternative, the violations were negligent.

58.     The Plaintiffs are entitled to recover the greater of their actual damages for this violation or statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n. They are entitled to actual damages under 15 U.S.C. § 1681o.

59.     The Plaintiffs are entitled to their attorneys' fees and costs pursuant to 15 U.S.C. §§1681n and 1681o.

WHEREFORE, Plaintiffs William Joseph Graham and Crystal Myrick request that the Court enter judgment for themselves and the classes they seek to represent against Defendants LexisNexis Risk & Information Analytics Management Group, Inc., Reed Elsevier, Inc., Seisint, Inc., and Professional Account Services, Inc. for:

1.     A determination that this action may proceed and be maintained as a class action;

2.     Statutory damages of between $100 and $1,000 per Class member for Defendants' willful violations of the Fair Credit Reporting Act;

3.     Punitive damages for the members of the Class, pursuant to the Fair Credit Reporting Act;

4.     The greater of their actual damages or statutory damages of $1,000 for each individual Plaintiff for Defendants' violations of the Fair Credit Reporting Act;

5.     Punitive damages for each individual Plaintiff, pursuant to the Fair Credit Reporting Act;

6.     Costs and reasonable attorney's fees for Defendants violations of the Fair Credit Reporting Act; and

7.     Such other relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
William Joseph Graham
Crystal Myrick
By Counsel

__/s/_____
Dale W. Pittman, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

Leonard A. Bennett, Esquire, VSB#37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
(757) 930-3660
(757) 930-3662 (Fax)
lenbennett@cox.net

Matthew J. Erausquin
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
(703) 273-6080
(888) 892-3512 (Fax)

OF COUNSEL:
Michael A. Caddell
Cynthia B. Chapman
Craig C. Marchiando
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Attorneys for Plaintiffs and the Classes